UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

DOUGLAS PAYTON, *pro se*,

                        Petitioner,

                -against-

STEVEN RACETTE, SUPERINTENDENT

                     Respondent.
-----------------------------------------------------------------x

                       MEMORANDUM AND ORDER
                       11-cv-1260 (PKC)

PAMELA K. CHEN, United States District Judge:

Douglas Payton ("Petitioner"), appearing *pro se*, seeks a writ of *habeas corpus*, pursuant to 28 U.S.C. § 2254, attacking his 2005 judgment convicting him of multiple counts of criminal sexual acts and robbery. For the reasons set forth below, Petitioner's motion for writ of *habeas corpus* is denied in its entirety.

## BACKGROUND

### I.      Charged Conduct and Indictment

On December 3, 2005, Petitioner, acting in concert with Reginald Dugue ("Dugue") and Terrance Terrell ("Terrell"), robbed a young couple and sexually assaulted the female victim, in Bay Shore, New York. (Plea Transcript, *People v. Payton*, No. 435B-2006 ("P."), Dkt. 2 (Document 8) 18-19.) At approximately 1:00 a.m., Petitioner pulled his car over, intending to rob the two victims, who were sitting in a parked car at the end of a cul-de-sac. (P. 21-22.) Petitioner put tape over his license plate and he, Dugue, and Terrell donned masks. (P. 23.) Using a black BB gun, Dugue forced the male victim out of the car. (P. 25-27.) Dugue then hit the male victim on the head with the BB gun. *Id.*

Next, Dugue ordered the couple to strip. (P. 28.) Petitioner knew then that Dugue was going to "do something" sexual to the female victim. (*Id.*) Petitioner ordered the male victim to remove speakers from the trunk of the male victim's car and place them in Petitioner's vehicle. *Id.* Petitioner saw Dugue walk towards Petitioner's car with the female victim and suspected again that Dugue was going to "do something sexual" with the female victim. (P. 30.) Petitioner ordered the male victim to the ground and warned him not to get up. (*Id.*) Petitioner saw Dugue with his pants down and saw the female victim performing oral sex on Dugue. (*Id.*) After fleeing the scene, Petitioner asked Dugue if the female victim had performed fellatio on him. (P. 31.) Dugue confirmed this, and indicated that the female victim had also been forced to perform oral sex on Terrell. (*Id.*)

Petitioner, Dugue, and Terrell split the proceeds of the robbery. Petitioner kept the victim's speakers and $15 "for gas." Dugue and Terrell split the remaining money. (P. 33.) Petitioner later cleaned the BB gun and threw it away in a dumpster. (P. 35.)

Petitioner was indicted on one count of Rape in the First Degree (New York Penal Law ("P.L.") §130.35[1]), two counts of Criminal Sexual Act in the First Degree (P.L. §130.50[1]), two counts of Robbery in the First Degree (P.L. § 160.15[4]), and three counts of Robbery in the Second Degree (P.L. §§160.10[1] and 160.10[2]).

## II.   Guilty Plea and Sentencing

On August 25, 2006, Petitioner entered a guilty plea to every charge in the indictment. In return, the court conditionally promised to sentence Petitioner to a determinate term of 15 years' imprisonment followed by five years of post-release supervision. Petitioner was certified as a sex offender. (P. 41-43.)

On February 27, 2007, Petitioner was sentenced to 15 years' imprisonment and five years' post-release supervision.

## III.    Direct Appeal

Petitioner appealed his conviction to the Supreme Court of the State of New York, Appellate Division, Second Department ("Appellate Division"), asserting that: (i) his plea allocution was insufficient; and (ii) the trial court improperly denied his application to withdraw his plea because the trial court failed to inform him of an affirmative defense to the charge of first-degree robbery.  The Appellate Division denied the appeal, finding that "the plea allocution was sufficient to establish his guilt of the crimes of criminal sexual act in the first degree and rape in the first degree based upon a theory of accessorial liability pursuant to Penal Law § 20.00." *People v. Payton*, 53 A.D.3d 590, 590 (2d Dept. 2008).  Furthermore, the court held that Petitioner's claim regarding his application to withdraw his plea was unpreserved for appellate review.  *Id.*

On May 12, 2009, Petitioner's application for leave to appeal was denied.  *People v. Payton*, 12 N.Y.3d 857 (2009).

## IV.    Post–Conviction Collateral Attack

Petitioner filed a motion under N.Y. Crim. Proc. Law ("C.P.L.") § 440.10 requesting that the Suffolk County Court vacate his conviction on the basis of ineffective assistance of counsel. Petitioner claimed that his trial counsel had: (i) failed to inform him that he could appear before the grand jury; (ii) failed to advise him of an available affirmative defense to the charge of robbery in the first degree; (iii) failed to disclose to Petitioner his co-defendants' statements and DNA reports; (iv) coerced Petitioner to plead guilty to sex crimes "he did not commit"; and (v) "stood silent during the prosecution's improper and leading allocution of [Petitioner]."  (Petition for Writ of *Habeas Corpus*, Dkt. 1, at 5-6.)  On March 16, 2010, Petitioner's application was denied.  *People v. Payton,* No. 00435B/2006 (Suffolk County Ct. 2010).  On July 22, 2010,

Petitioner's application to appeal to the Appellate Division was denied. *People v. Payton,* No. 00435B/2006 (2d Dept. 2010).

## V.    The Instant Petition

On March 14, 2011, Petitioner timely filed the instant petition for a writ of *habeas corpus*. Petitioner alleges that: (i) his plea allocution was insufficient to support his convictions of the sex crimes charged in Counts One through Three of the indictment; (ii) his guilty plea to the crime of first-degree robbery was not made knowingly, intelligently, or freely because the trial court and his trial counsel failed to advise him of an affirmative defense; and (iii) his trial counsel provided ineffective assistance.

## DISCUSSION

## I.   Applicable *Habeas Corpus* Standards

At the outset, the Court is mindful of its obligation to construe *pro se* pleadings "to raise the strongest arguments that they suggest[.]" *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir. 2006). At the same time, "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007).

Under 28 U.S.C. § 2254, a federal district court is empowered to "entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." In order to obtain relief, an individual in custody must demonstrate, *inter alia*, that he has: (1) exhausted his potential state remedies; (2) asserted his claims in his state appeals such that they are not procedurally barred from federal *habeas* review; and (3) satisfied the deferential standard of review set forth in the Antiterrorism and Effective Death Penalty Act

of 1996 ("AEDPA"), if his appeals were decided on the merits. *See e.g., Philbert v. Brown*, 11-CV-1805, 2012 WL 4849011, at *5 (E.D.N.Y. Oct. 11, 2012).

### A. Exhaustion

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1). "The exhaustion requirement is not satisfied unless the federal claim has been fairly presented to the state courts," such that the petitioner "informed the state court of both the factual and the legal premises of the claim he asserts in federal court." *Daye v. Att'y Gen. of State of N.Y.,* 696 F.2d 186, 191 (2d Cir. 1982) (en banc) (citations and internal quotation marks omitted).

A petitioner is not required to cite "book and verse on the federal constitution" in order for a claim to be fairly presented. *Picard v. Connor,* 404 U.S. 270, 275, 278 (1971) (citations omitted)). Instead, exhaustion may be satisfied where the legal basis of a claim made in State court is the "substantial equivalent of the habeas claim." *Id* (citations omitted). "This means, in essence, that in state court the nature or presentation of the claim must have been likely to alert the court to the claim's federal nature." *Daye,* 696 F.2d at 192. Thus, even if a petitioner does not cite any federal constitutional provisions, he still may fairly present his federal claim to the State court even by alleging a pattern of facts that generally give rise to constitutional analysis. *See id.* at 194.

### B. Procedural Default

"A federal habeas court will not review a claim rejected by a state court if the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *See Walker v. Martin*, 562 U.S. 307, 315 (2011) (internal

citations omitted); *see Cone v. Bell,* 556 U.S. 449, 465 (2009) ("It is well established that federal courts will not review questions of federal law presented in a habeas petition application when the state court's decision rests upon a state-law ground that is independent of the federal question and adequate to support the judgment.") (internal quotation marks and citations omitted). Where the State court has actually and explicitly relied upon procedural default to dispose of a claim, there is an "adequate and independent state ground" for the judgment, and federal *habeas* review is prohibited. *Harris v. Reed,* 489 U.S. 255, 260 (1989); *see also Galarza v. Keane,* 252 F.3d 630, 637 (2d Cir. 2001) (State court's reliance must be "unambiguous and clear from the face of the opinion"); *Coleman v. Thompson,* 501 U.S. 722, 750 (1991) (reasoning that states have an interest in "channeling the resolution of claims to the most appropriate forum, in finality, and in having the opportunity to correct its own errors"); *Gutierrez v. Smith*, 702 F.3d 103, 111 (2d Cir. 2012) ("If a state appellate court refuses to review the merits of a criminal defendant's claim of constitutional error because of his failure to comply [with a state procedural rule], a federal court generally may not consider the merits of the constitutional claim on habeas corpus review.") (internal citations omitted).

To overcome the bar to federal *habeas* review of a claim that has been procedurally defaulted in State court, "the petitioner must show cause for the default and prejudice, or demonstrate that failure to consider the claim will result in a miscarriage of justice (i.e., the petitioner is actually innocent)." *Aparicio v. Artuz,* 269 F.3d 78, 90 (2d Cir. 2001) (citing *Coleman*, 501 U.S. at 748-50). The Court may find cause where "some objective factor external to the defense" prevented the petitioner from presenting the claim. *Coleman*, 501 U.S. at 753. Once cause is established, the petitioner must also demonstrate "prejudice" by showing that "there is a reasonable probability that the result of the trial would have been different" had the

alleged constitutional violation not occurred. *Strickler v. Greene*, 527 U.S. 263, 289 (1999) (citation and internal quotation marks omitted). If the petitioner is unable to show cause and prejudice, his procedural default may only be excused if he can show that a fundamental miscarriage of justice would result from a failure to hear the claim on the merits, *i.e.,* "that he is actually innocent of the crime for which he has been convicted." *Dunham v. Travis,* 313 F.3d 724, 730 (2d Cir. 2002) (citing *Schlup v. Delo,* 513 U.S. 298, 321 (1995)).

### C. AEDPA Deference

Where a State court reaches the merits of a claim asserted in a § 2254 *habeas* petition, the State court's decision is entitled to a deferential standard under AEDPA. Under AEDPA, an application for *habeas corpus* relief should not be granted unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Ryan v. Miller,* 303 F.3d 231, 245 (2d Cir. 2002).

The question is "not whether the state court was incorrect or erroneous in rejecting petitioner's claim, but whether it was objectively unreasonable in doing so." *Ryan,* 303 F.3d at 245 (citing *Sellan v. Kuhlman*, 261 F.3d 303, 309-310 (2d Cir. 2001) (internal quotation marks, alterations, and emphases omitted)). The petition may be granted only if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011).

A decision is "contrary to" federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially

indistinguishable facts." *Williams v. Taylor,* 529 U.S. 362, 412-413 (2000). An "unreasonable application" is one in which "the state court identifie[d] the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applie[d] that principle to the facts of the prisoner's case." *Id.* at 413. Finally, "a determination of a factual issue made by a State court shall be presumed to be correct," and "[t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## II. Proffered Grounds for *Habeas* Relief[1]

### A. Plea Allocution

Petitioner argues that: (1) his plea allocution was not knowing, intelligent, and voluntary; and (2) the allocution was factually insufficient to support his convictions of two counts of criminal sexual act in the first degree and one count of rape in the first degree. The Court finds that Petitioner is not entitled to *habeas* relief on either ground.

### i. Voluntariness of Petitioner's Guilty Plea

The standard for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Hill v. Lockhart,* 474 U.S. 52, 56 (1985) (internal citations omitted). *See also Parke v. Raley,* 506 U.S. 20, 28-29 (1992) (plea is valid when it is knowingly and voluntarily made); *Boykin v. Alabama¸* 395 U.S. 238, 242-43 (1969) (the United States Constitution requires that a guilty plea be voluntarily and intelligently entered). To establish that a guilty plea was knowing, intelligent, and voluntary, the trial court must find that the defendant was competent to proceed, had a

---

[1] The Court finds that Petitioner has properly exhausted his *habeas* claims and that all but his claim regarding the sufficiency of his factual plea allocution, *see infra* at 11, are not procedurally barred. The Court, therefore, considers Petitioner's claims on the merits, giving due deference to the State court's decisions, as required by AEDPA. 28 U.S.C. § 2254(d).

rational and factual understanding of the proceedings, and was aware of the constitutional protections relinquished upon entry of the plea. *See, e.g., Oyague v. Artuz,* 393 F.3d 99, 106 (2d Cir. 2004).

With this standard in mind, it is evident from the record that Petitioner knowingly, intelligently, and voluntarily entered into the guilty plea. Petitioner consulted with his counsel before the allocution, and the State court judge advised and questioned Petitioner about the nature of the charges to which he was pleading guilty, the right not to plead guilty, the right to trial, the right to be represented by counsel, and the right at trial to confront adverse witnesses. (P. 5-10.) The court also confirmed the waiver of Petitioner's trial and appellate rights. (P. 11.) In light of the "strong presumption of verity" of guilty pleas, Petitioner has not established that his plea was not knowing, intelligent, and voluntary. *Blackledge v. Allison,* 431 U.S. 63, 74 (1977); *see also United States v. Cabrera*, 563 Fed. Appx. 861, 863 (2d Cir. 2014).

### ii. Sufficiency of Petitioner's Plea Allocution

Petitioner also asserts that his guilty plea is invalid because the trial court failed to conduct a sufficient factual allocution to establish his guilt with respect to the sexual assault crimes. However, such a claim is not cognizable on federal *habeas* review. The United States Constitution does not require that the court conduct a factual inquiry before accepting a defendant's guilty plea. *Willbright v. Smith,* 745 F.2d 779, 780 (2d Cir. 1984) ("[D]ue process does not mandate a factual basis inquiry by state courts."); *Mayo v. Perez*, No. 11-cv-3817 (SJF), 2014 WL 4829350 at *3 (Sept. 24, 2014) ("Nor does the United States Constitution require a factual inquiry for a court to accept a guilty plea. Rather, it is the Federal Rules of Criminal Procedure, not due process, that requires federal courts to conduct a factual inquiry before accepting a guilty plea."). Instead, the Court must be satisfied that the plea was voluntary and

intelligent "considering all of the relevant circumstances." *Brady v. United States*, 397 U.S. 742, 750 (1970).

Furthermore, even if such a claim were cognizable, it would fail on the merits. The Appellate Division's finding that "the plea allocution was sufficient to establish [Petitioner's] guilt of the crimes of criminal sexual act in the first degree and rape in the first degree based upon a theory of accessorial liability pursuant to Penal Law § 20.00" is not contrary to or an unreasonable application of clearly established federal law, nor is it based upon an unreasonable determination of the facts. The record reveals that Petitioner provided a detailed factual allocution that sufficiently demonstrated his accessorial culpability for the sexual assault crimes committed by his co-defendants. Under New York law, a person is criminally liable as the accomplice to an offense committed by another "when, acting with the mental culpability required for the commission thereof, he solicits, requests, commands, importunes, or intentionally aids such person to engage in such conduct." N.Y. Penal Law § 20.00. Though Petitioner himself may not have sexually abused or raped the female victim, his plea allocution established that he joined with his co-defendants in a concerted effort to do so. Petitioner participated in the decision to rob the couple. (P. 21-22.) Petitioner was driving his co-defendants in his car, and disguised his license plate. *Id.* He wore a mask to protect his identity because he knew that "something bad" was going to happen. (P. 23.) Petitioner made sure the male victim obeyed Dugue's order to take off his clothes, and he knew when Dugue ordered the female victim to strip that Dugue intended to "do something sexual" to the female victim. (P. 28.) Petitioner then detained the male victim from coming to the aid of the female victim as Dugue forced her to perform fellatio on him. (P. 30.) Petitioner's conduct prior to, during, and

after the assaults, therefore, sufficiently establish his liability as an accomplice to the sex offenses.

### B.  Waiver of an Affirmative Defense

Petitioner next argues that his plea was involuntary because neither the trial court nor his counsel informed him of the availability of an affirmative defense to the charges of robbery in the first degree.  Petitioner insists that he could not be guilty of first-degree robbery because he and his co-defendants used a BB gun, rather than an operable firearm.

The Appellate Division held that Petitioner's claim was "unpreserved for appellate review, and [declined] to reach it in the exercise of [the] interest of justice jurisdiction." *Payton*, 53 A.D.3d at 590. The Appellate Division's denial of this claim based on a State procedural grounds bars this claim from federal *habeas* review.  *See Walker*, 562 U.S. at 315; *Cone,* 556 U.S. at 465; *Harris v. Reed,* 489 U.S. 255, 260 (1989); *Gutierrez*, 702 F.3d at 111; *see also Swanton v. Graham*, No. 07-CV-4113 (JFB), 2009 WL 1406969, at *7 n. 6 (E.D.N.Y. May 19, 2009) (finding claim barred because in "New York, the firmly established and regularly followed rule for preserving a claim that a guilty plea was involuntarily entered requires a defendant to move to withdraw the plea or to vacate the judgement of conviction.").  Petitioner makes no attempt to argue that an exception to the procedural bar doctrine applies.  *See Aparicio*, 269 F.3d at 90 (to overcome procedural bar, "the petitioner must show cause for the default and prejudice, or demonstrate that failure to consider the claim will result in a miscarriage of justice (i.e., the petitioner is actually innocent.") (citing *Coleman*, 501 U.S. at 748-50).

However, even if the Court were to review the merits of Petitioner's claim, it would fail. The plea minutes clearly show that Petitioner pleaded guilty only after consulting with his attorney.  (P.10.)  During the comprehensive plea allocution, Petitioner said that the gun used in

the robbery was a BB gun though it appeared to look like a regular firearm.  (P. 25-26.)

Petitioner now claims that this comment raised a potential affirmative defense to the two counts

of robbery in the first degree and that the court, therefore, had a duty to explain the affirmative

defense to him before accepting his plea.  However, as a matter of federal constitutional law, no

such duty exists.

New York Penal Law Section 160.15 provides that a defendant is guilty of first-degree

robbery when he forcibly steals property, and in the course of the robbery or flight therefrom, he

or another participant in the crime displays what *appears* to be a firearm.  The statute provides

for an affirmative defense if the firearm at issue "was not a loaded weapon from which a shot,

readily capable of producing death or other serious physical injury, could be discharged."   In

other words, if the defendant shows by a preponderance of the evidence that the object displayed

was not an operable firearm, he may be convicted only of second-degree robbery.  *People v.*

*Howard*, 22 N.Y.3d 388, 407 (2013).[2]

However, the potential availability of an affirmative defense does not create a federal

constitutional right to be advised of that defense by the trial court.  In considering two similar

cases, the Second Circuit explained that there is a distinction, when considering a due process

claim, between the elements of the crime to which a defendant pleads guilty and an affirmative

defense to that crime.  *Ames v. New York State Div. of Parole,* 772 F.2d 13, 15 (2d Cir. 1985);

s*ee also Mitchell v. Scully,* 746 F.2d 951, 956 (2d Cir. 1984).  In both *Ames* and *Mitchell*, the

defendants pleaded guilty to first degree robbery.  Both claimed that the robbery was committed

_____

[2] New York law suggests that a BB gun is not a "firearm" within the meaning of the statute. *See People v. Layton,* 302 A.D.2d 408 (2d Dept. 2003) (vacating sentence of first-degree robbery where defendant establish that the gun used in the robbery was a BB gun); *People v. Bowman,* 133 A.D.2d 701 (2d Dept. 1987) (plea to first-degree robbery modified in the interest of justice to second-degree robbery where defendant used a BB gun); *People v. Wilson,* 727 N.Y.S.2d 62, 63 (1st Dept. 2001) ("[A]n air gun or a BB gun is not a firearm.").

with a toy or inoperable firearm and sought *habeas* relief on the ground that their pleas were involuntary because their respective trial courts did not inform them of the affirmative defense to first-degree robbery. The Second Circuit ruled that Ames's and Mitchell's pleas were not involuntary because "due process does not require that a defendant be advised of every basis on which he might escape or receive a lesser punishment for an offense [particularly where] the burden of persuasion with respect to the appropriate defense rests on the defendant." *Ames,* 772 F.2d at 15 (citing *Mitchell,* 746 F.2d at 956-57). "This is true even when facts raised at the allocution suggest that such a defense might be available, as long as 'there [is] no discrepancy between the crime [the defendant] pled to and the conduct he admitted.'" *Anaya v. Brown*, 05 Civ. 8974 (DLC), 2006 WL 2524079, at * 10 (quoting *Ames*, 772 F.2d at 15); *see also United States v. Adams*, 448 F.3d 492, 501 n. 5 (2d Cir. 2006) (distinguishing between defendant's admissions during guilty plea that did not "controvert any element of the offense" from those that "confessed to each element of the offense while alluding to an affirmative defense").

Thus, the State court judge who presided over Petitioner's guilty plea was under no constitutional obligation to advise Petitioner of a potential affirmative defense to the first-degree robbery charge to which Petitioner pled guilty. As in *Ames*, "[b]y admitting that he committed each of the robberies with what appeared to be a pistol, [Petitioner] established the factual predicate for his conviction[s] of robbery in the first degree[,]" 772 F.2d at 15, which convictions were not rendered unconstitutional by the trial court not advising Petitioner of an affirmative defense.

## C. Ineffective Assistance of Counsel

Finally, Petitioner argues that he was denied effective assistance of counsel in violation of the Sixth Amendment. Specifically, he claims that counsel: (1) failed to notify him of his

right to appear before the grand jury; (2) failed to inform him of the affirmative defense to robbery in the first degree; (3) failed to notify him of favorable DNA evidence and his co-defendants statements; (4) coerced Petitioner into pleading guilty to the charged sex crimes; and (5) failed to object to "the prosecution's improper and leading allocution of [Petitioner]." (Dkt. 1 at 5-6.)

To prevail on a claim for ineffective assistance of counsel, Petitioner must demonstrate (1) that "counsel's representation fell below an objective standard of reasonableness," and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington,* 466 U.S. 668, 680 (1984).

The first prong of the standard articulated in *Strickland* requires a showing that counsel's performance was deficient. Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Greiner v. Wells,* 417 F.3d 305, 319 (2d Cir. 2005) (quoting *Strickland,* 466 U.S. at 690). A "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight." *Id.* at 319. The second prong focuses on prejudice to the petitioner. A petitioner is required to show that the errors were of such a magnitude that they "undermine confidence in the outcome" of the proceeding. *Pavel v. Hollins,* 261 F.3d 210, 216 (2d Cir. 2001) (quoting *Strickland,* 466 U.S. at 694).

The AEDPA requires the Court to grant substantial deference to the State court's rulings on an ineffective assistance claim. *See Harrington,* 131 S. Ct. at 785 (2011). Review of a State court's rejection of an ineffective assistance claim is "doubly deferential" and carries a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Knowles v. Mirzayance,* 556 U.S. 111, 123-24 (2009).

Petitioner bears the burden of persuasion to demonstrate that his counsel's performance was so inadequate as to violate the Sixth Amendment. *See Strickland,* 466 U.S. at 696. In deciding Petitioner's Section 440.10 motion, the State court found that Petitioner's counsel "represented the defendant effectively and that defendant voluntarily accepted the highly favorable plea bargain secured by his attorney." For the reasons discussed below, this finding was not contrary to clearly established Federal law or an unreasonable determination of the facts.

### i. Failure to Notify of Right to Testify in the Grand Jury

Petitioner claims, as he did in his Section 440.10 motion, that his trial counsel failed to notify him of his right to testify in the grand jury. This claim fails under 28 U.S.C. § 2254 because there is no federally-cognizable ineffective assistance claim concerning advice regarding the state grand jury process. As the Second Circuit explained:

> We also reject the petitioner's argument that his claim should be interpreted as a claim for ineffective assistance of counsel based on his attorney's failure to secure his right to testify before the grand jury. . . .A defendant's right to testify before the grand jury is not a constitutional right; rather, it is a statutorily created right. N.Y.Crim. Proc. Law § 190.50(5). New York courts have consistently held that counsel's failure to ensure that the defendant testifies before the grand jury does not amount to ineffective assistance of counsel.

*Davis v. Mantello*, 42 Fed. Appx. 488, 491 n. 1 (2d Cir. 2002); *accord, e.g.*, *Dickens v. Filion*, 02-CV-3450, 2002 WL 31477701 at *15 (S.D.N.Y. Nov. 6, 2002); *see also, e.g.*, *Turner v. Fischer*, Nos. 01-CV-3251, 03-MISC-0066, 2003 WL 22284177 at *6 (E.D.N.Y. Aug. 20, 2003). Petitioner's claim that he was not provided with proper grand jury notice affords no basis for *habeas* relief.

Additionally, Petitioner's trial counsel submitted an affidavit (Affidavit of Peter Bongiorno Esq. ("Bongiorno Aff."), Dkt No. 22) in which he states that Petitioner was "aware of his right to testify in the Grand Jury" and that Petitioner "rightfully declined to testify as his

testimony would have been highly incriminating and devastating to his case." (Borgiorno Aff. 2-3.) The Court credits Mr. Bongiorno's affidavit, and finds that it "need not accept a petitioner's uncorroborated, self-serving testimony as true." *Grullon v. United States*, No. 99-CV-1877 (JFK), 2004 WL 1900340 at *6 (S.D.N.Y. Aug. 24, 2004).[3]

Furthermore, even assuming that Petitioner was not given notice of the grand jury presentation, he has not indicated what he would have testified to at the grand jury that would have prevented his indictment. Petitioner thus has not demonstrated that his counsel's alleged failure to provide him with notice of his right caused him any prejudice and his claim fails under *Strickland. See, e.g., Reeb v. Woods,* 751 F. Supp. 2d 484, 487 (W.D.N.Y. 2010); *Cates v. Senkowski*, 02-CV-5957, 2003 WL 1563777 at *3 (S.D.N.Y. Mar.17, 2003).

### ii. Failure to Inform Petitioner of Affirmative Defense

Petitioner argues that his counsel was ineffective for failing to discuss a possible affirmative defense to the two charges of first-degree robbery. As an initial matter, Mr. Bongiorno affirms that he and Petitioner "fully discussed every potential defense available to him including the affirmative defense to the charge of robbery in the 1st degree." (Bongiorno Aff. 1.) The Court credits this statement, which supports a finding that counsel's performance was not deficient.

In any event, Petitioner cannot establish the prejudice prong of *Strickland* because had Petitioner gone to trial in order to establish the affirmative defense, Petitioner would have had to admit the underlying facts surrounding the robbery charges. Even if Petitioner was successful in

---

[3] The Court finds that trial counsel's detailed and credible affidavit contradicting Petitioner's claim is sufficient to support a dismissal without a full evidentiary hearing. *See Chang v. United States*, 250 F.3d 79, 85-86 (2d Cir. 2001) (no evidentiary hearing necessary when the record has been "supplemented by a detailed affidavit from trial counsel credibly describing the circumstances.")

convincing a jury that he only used a BB gun (hardly a given since the gun was never recovered), he would likely only be able to reduce the two first-degree robbery counts to robbery in the second degree. These counts would be in addition to the three counts of robbery in the second degree already charged in the indictment. Convictions on these two second-degree robbery charges alone would have exposed Petitioner to sentences of 3-1/2 to 15 years' imprisonment on each count. N.Y. Penal Law §§ 160.10, 70.02(3)(b). Petitioner also faced the prospect of additional terms of incarceration given the likelihood of conviction on the other robbery charges, which were based on the same evidence. Petitioner's sentence resulting from the admissions he would have had to make to prove the affirmative defense could have greatly exceeded the 15 years of incarceration he actually did receive. Thus, Petitioner has failed to show a reasonable probability that, but for his attorney's alleged ineffectiveness, the five counts of robbery would have been disposed of on a more favorable basis. Furthermore, the fact that Petitioner was also indicted on one count of rape in the first degree and two counts of sex act in the first degree— crimes as to which Petitioner had no affirmative defense and each of which carried a potential sentence of 5 to 25 years (N.Y. Penal Law §§ 130.50, 70.02(3)(a))[4]—undermines any probability that the result would have been different had he prevailed on an affirmative defense to the first-degree robbery charges. [5]

---

[4] Respondent asserts that "Petitioner faced a sentencing exposure of 25 years to life if he was found guilty on just *one* count of criminal sex act in the first degree." (Dkt. 8-2 at 15.) It is unclear, however, upon what statutory authority Respondent relies. Notably, at Petitioner's sentencing, the prosecution argued for a 30-year sentence. (Dkt. 8 at ¶ 33 (citing Sentencing Transcript at 17.)

[5] The evidence at trial would have included the victims' identification of Petitioner as one of the perpetrators, their description of the events and Petitioner's role in the crimes, and Petitioner's post-arrest statements to police, including his admission that he made the victims strip, and detained the male victim as he saw Dugue force the female victim to perform oral sex. (*See* Affidavit of Kevin Hearn, Brief of Respondent-Appendix, Dkt. 9, A-7; Statement of Douglas

Accordingly, Petitioner has failed to satisfy the prejudice prong of *Strickland*. *See Panuccio v. Kelly*, 927 F.2d 106, 209 (2d Cir. 1991) ("[A]n assessment of the probable increase or reduction in sentence relative to the plea is clearly relevant to the determination of whether an attorney acted competently in recommending a plea.").

### iii. Failure to Notify Petitioner of Favorable DNA Evidence and Co-Defendants' Statements

Petitioner asserts that his counsel was ineffective because he failed to advise Petitioner of favorable evidence regarding the sexual assault crimes contained in the statements of Petitioner's co-defendants and the DNA report. Petitioner claims that the DNA evidence excludes him from sexually assaulting the female victim. (Affidavit in Support in Notice of Motion to Vacate Judgment Pursuant to C.P.L. 440.10(1)(h) and 440.10.20, Exhibit E, Dkt. 9 at 7.) Petitioner also claims that in their post-arrest statements, each of Petitioner's co-defendants admitted to sexually assaulting the female victim during the robbery but did not indicate that Petitioner physically participated in the sexual assaults. (Affidavit in Support in Notice of Motion to Vacate Judgment Pursuant to C.P.L. 440.10(1)(h) and 440.10.20, Exhibits B and C, Dkt. 9.)

Initially, the Court credits the statements of Petitioner's counsel, Mr. Bongiorno, that he discussed "the contents of all of the discovery" disclosed by the prosecutor with Petitioner, including the co-defendants' and victims' statements, and the forensic and DNA reports. (Bongiorno Aff. 1-2.)

Furthermore, even assuming *arguendo* that trial counsel failed to advise Petitioner of the co-defendants' statements or the contents of the DNA report, Petitioner would not be able to establish that he was prejudiced by the alleged non-disclosure, as required by *Strickland*. Neither

---

Payton, Response to Demand and People's Demand for Reciprocal Discovery and Bill of Particulars, Dkt. 9, 13-14.)

the co-defendants' statements, nor the DNA evidence, relating to the sexual assault of the female victim, negated Petitioner's guilt because, despite his lack of direct physical participation in the sex assault crimes, Petitioner was guilty of aiding his co-defendants' sexual assault of the victim. Petitioner's accessorial liability for the sexual assault crimes was not based on Petitioner's own physical assault of the victim and, therefore, was not undermined by his co-defendants' admissions that they were the ones who physically assaulted her, or by the DNA evidence corroborating that fact. If anything, evidence establishing the commission of the sexual assault by Petitioner's co-defendants was necessary to support Petitioner's liability as an accessory. N.Y. Penal Law § 20.00 (McKinney 2009).

### iv. Coercion

Petitioner asserts that his trial counsel coerced him into pleading guilty, but offers no persuasive evidence to support this claim.[6] Indeed, as previously discussed, the record before the Court indicates that Petitioner acted knowingly, intelligently, and voluntarily in pleading guilty to first-degree robbery and being an accessory to the sexual assault of the female victim.

When a defendant "has explicitly stated in his allocution that he fully understands the consequences of his plea and that he has chosen to plead guilty after a thorough consultation with his attorney, a district court on habeas review may rely on the defendant's sworn statements and hold him to them." *Padilla v. Keane*, 331 F.Supp.2d 209, 217 (S.D.N.Y. 2004); *see also United States v. Torres*, 129 F.3d 710, 715 (2d Cir. 1997) ("A defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw the guilty

---

[6] Petitioner offers only an affidavit from his mother in which she states that she does not remember Petitioner's attorney discussing with Petitioner and her an affirmative defense based on the use of a BB gun, and that she would have remembered such a conversation. (*Id.*) However, according to Petitioner, his mother was not present for every meeting he had with his attorney. *Id.* ("I submit herewith the Affidavit of my mother, Ms. Beth Day, who was present during many, but not all of our meetings[,] to rebut defense counsel's response.").

plea.")  Here, in response questioning by the State court judge, Petitioner specifically stated, under oath that he had sufficient time to confer with his attorney and his parents.  (P. 5-6.)  He acknowledged that he understood that he was foregoing his trial rights by pleaded guilty.  (P. 6-7, 8-9.)  He asserted that he was aware that he was deserting any defenses he might have raised and that he acknowledged that his attorney had discussed possible defenses with him and that he understood those discussions.  (P. 10.)  Accordingly, viewing the record as a whole, the Court finds no error in the State court's determination that Petitioner's plea was intelligent and voluntary, and not the result of any coercion by his attorney.

### v.  Failure to Object to Allocution

Petitioner contends that his trial counsel erred by failing to object to the prosecution's improper and leading allocution of [Petitioner]" during the plea proceeding.  (Dkt. 1 at 6.) Petitioner appears to object to the prosecution asking Petitioner questions during the plea proceeding.  Petitioner argues that it was improper for the prosecution to "[tell] the story and [admit] to the essential elements of the crime charged."  (Affidavit in Support in Notice of Motion to Vacate Judgment Pursuant to C.P.L. 440.10(1)(h) and 440.10.20, Dkt. 9, at 39.) Petitioner argues that his counsel should have objected and requested that the judge alone ask the Petitioner questions during the plea proceeding.  *Id*.

There was nothing improper about the questions asked by the prosecution during the plea proceeding regarding Petitioner's involvement in the charged offenses, nor was there any basis for Petitioner's counsel to object to this questioning.  *See People v. Smith,* 760 N.Y.S.2d 847, 847 (1st Dept. 2003) ("Although a plea allocution should normally be conducted by the court itself, here the prosecutor questioned defendant in the court's presence and under its supervision, and there was nothing defective about the allocution.").  *See also People v. Linares,* 116 A.D.3d

792, 792 (2d Dept. 2014) (rejecting argument that the court improperly delegated its authority to conduct the plea proceeding). Counsel's "failure to raise a meritless legal argument cannot constitute ineffective assistance of counsel." *United States v. Regalado*, 518 F.3d 143, 149 n. 3 (2d Cir. 2008) ("Failure to make a meritless argument does not amount to ineffective assistance."). Furthermore, Petitioner does not explain how the plea proceeding or Petitioner's allocution would have been different or would have altered the result in his case.

In sum, Petitioner fails to demonstrate that his trial counsel acted unreasonably or that he was prejudiced by his attorney's conduct in any respect. The State court's rejection of Petitioner's claim for ineffective assistance of counsel was neither contrary to, nor based on an unreasonable application of, established Supreme Court precedent.

## CONCLUSION

For the foregoing reasons, the Court finds that Petitioner has demonstrated no basis for *habeas* relief under 28 U.S.C. § 2254. Therefore, the petition for a writ of *habeas corpus* is denied in its entirety. Because Petitioner has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall issue. *See* 28 U.S.C. § 2253(c)(2). The Clerk of the Court shall enter judgment accordingly and close this case.

SO ORDERED.

  Pamela K. Chen
PAMELA K. CHEN
United States District Judge

Dated: December 30, 2015
          Brooklyn, New York